1
2
3
4
5
6
7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

10   CHRISTI DONAHUE,                    )    NO. EDCV 04-725 (Mc)
                                         )
11                  Plaintiff,           )
                                         )    MEMORANDUM OF DECISION
12            v.                         )    AND ORDER IN A SOCIAL
                                         )    SECURITY CASE
13   JO ANNE B. BARNHART,                )
     Commissioner of the                 )
14   Social Security Administration,     )
                                         )
15                  Defendant.           )
     _____)
16

17        The plaintiff, CHRISTI DONAHUE, filed the present action for

18   review of a final determination of the Commissioner of Social Security

19   (the "Commissioner") that the plaintiff is not disabled and not

20   entitled to disability insurance benefits ("DIB").  For the reasons

21   set forth below, the court finds that the decision of the Commissioner

22   is supported by substantial evidence and free of legal errors.

23   Therefore, the decision of the Commissioner is affirmed.

24                            **BACKGROUND**

25        The plaintiff protectively filed an application for DIB under the

26   Social Security Act (the "Act") on March 27, 2001. [Administrative

27   Record ("AR") 85-87, 106.]  The Commissioner denied the application

28   initially and on reconsideration. [AR 43-46, 50-54.]  At the

plaintiff's request, an administrative hearing was held before Administrative Law Judge T. Patrick Hannon on September 12, 2002. [AR 576.] Although the plaintiff's attorney was present, the plaintiff was not. [AR 66, 576.] ALJ Hannon issued a decision dated October 4, 2002, finding that the plaintiff was not disabled. [AR 34-42]. On appeal to the Appeals Council, the matter was remanded to allow the plaintiff an opportunity for a new hearing and to obtain the testimony of a vocational expert. Further, the Appeals Council found that, although ALJ Hannon referred to drug addiction and alcoholism as being "material" to the claimant's limitations, there was no specific finding that the plaintiff was disabled when considering the substance abuse. Therefore, the sequential evaluation under Public Law 104-121 was not followed. [AR 66-67.]

In accordance with the Appeals Council order of remand, a second hearing was held before Administrative Law Judge Jacqueline Drucker (the "ALJ") on September 29, 2003. [AR 529-73.] On November 6, 2003, the ALJ filed a decision again concluding that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 12-19.] The Appeals Council denied the plaintiff's request for review of the ALJ's decision. [AR 5-7.] The decision of the ALJ stands as the final decision of the Commissioner.

Thereafter, the plaintiff filed the present action. The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge. The parties have entered into a Joint Stipulation setting forth their arguments.

**STANDARDS OF REVIEW**

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a

- 2 -

1  whole; or (b) the Commissioner applied an improper legal standard.

2  See 42 U.S.C. 405(g); <u>Gordon v. Secretary of Health and Human</u>

3  <u>Services</u>, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence

4  means "more than a mere scintilla" but less than a preponderance.

5  <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

6  L.Ed.2d 842 (1971); <u>Desrosiers v. Secretary of Health and Human</u>

7  <u>Services</u>, 846 F.2d 573, 576 (9th Cir. 1988).  "Substantial evidence"

8  is evidence a "reasonable mind might accept as adequate to support a

9  conclusion."  <u>Richardson v. Perales</u>, 402 U.S. at 402; <u>Gordon v.</u>

10 <u>Secretary of Health and Human Services</u>, 803 F.2d at 1072.

11      This court must review the record as a whole and consider adverse

12 as well as supporting evidence.  <u>See</u> <u>Green v. Heckler</u>, 803 F.2d 528,

13 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than

14 one rational interpretation, the court must sustain the Commissioner's

15 decision.  <u>See</u> <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir.

16 1984).

17                    **THE FIVE-STEP SEQUENTIAL EVALUATION**

18      The Commissioner has established a five-step sequential

19 evaluation for determining whether a person is disabled.  First, the

20 Commissioner determines whether the person is engaged in "substantial

21 gainful activity."  If so, the Commissioner denies disability

22 benefits.  Second, if the person is not so engaged, the Commissioner

23 determines whether the person has a medically severe impairment or

24 combination of impairments.  If the person does not have a severe

25 impairment or combination of impairments, the Commissioner denies

26 benefits.  Third, if the person has a severe impairment, the

27 Commissioner determines whether the impairment meets or equals one of

28 a number of "listed impairments."  If the impairment meets or equals a

                                   - 3 -

"listed impairment," the Commissioner conclusively presumes that the person is disabled.  Fourth, if the impairment does not meet or equal the "listed impairments," the Commissioner determines whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, the Commissioner denies benefits.  Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to disability benefits only if he or she is unable to perform other work.  See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

## PUBLIC LAW 104-121

Notwithstanding the above, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits. Under provisions added by the Contract with America Advancement Act, Pub.L. No. 104-121, 110 Stat. 847 (March 29, 1996), an 'individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.'" Bustamante v. Massanari,  262 F.3d 949, 954 (9th Cir. 2001), quoting 42 U.S.C. § 423(d)(2)(C); see also Sousa v. Callahan, 143 F.3d 1240, 1242 (9th Cir. 1998).  The key factor in making the determination whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether the Commissioner would still find plaintiff disabled if he or she stopped using drugs or alcohol.  20 C.F.R. § 404.1535 (b).  If the Commissioner finds that plaintiff's remaining limitations, absent the

1  drug or alcohol addiction, would not be disabling, the Commissioner

2  will find that drug addiction or alcoholism is a contributing factor

3  material to the determination of disability and deny benefits.  20

4  C.F.R. § 404.1535 (b)(2)(i); see also Sousa, 143 F. 3d at 1245.

5  **FINDINGS OF THE ALJ**

6  The plaintiff was born November 7, 1962. [AR 80, 85.]  The

7  plaintiff has a high school education with some college credits [AR

8  13, 103, 146, 531] and past relevant work experience as a

9  receptionist, secretary, billing representative, and a participant in

10  a college work-study program [AR 13, 141, 565].  The plaintiff alleges

11  that she has been unable to work since March 1, 2000 [AR 85], because

12  of blindness in the right eye, bipolar disorder, chronic depression

13  requiring medication, headaches secondary to computer use, and chronic

14  obstructive pulmonary disease.  [AR 97, 104-05.] The plaintiff

15  indicated that she wished to obtain DIB until she was able to obtain

16  her college degree and until she could obtain a job which she could

17  perform. [AR 147, 152.]

18  The ALJ found that the plaintiff had not engaged in substantial

19  gainful activity since the alleged onset of disability.  The ALJ found

20  that the plaintiff had a substance addiction disorder and an

21  underlying affective disorder. [AR 16.] Additionally, the plaintiff

22  suffers from a respiratory disorder [AR 14], and the plaintiff is

23  blind in the right eye [Id.].  The ALJ found that the plaintiff's

24  "significant substance addiction" was "material to her ability to

25  perform work activities."  The ALJ determined that the plaintiff's

26  medically determinable impairments do not meet or medically equal one

27  of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

28  [AR 18.] The ALJ found that the plaintiff's allegations regarding her

- 5 -

limitations were not entirely credible and that she retained the residual functional capacity to lift and or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk at least six hours in an eight-hour workday with normal breaks and sit about six hours in an eight-hour workday with normal breaks.  The ALJ further found that the plaintiff could not work in an environment with exposure to more than a moderate concentration of dust and fumes.  The plaintiff could perform simple repetitious tasks which do not require dealing with the general public.  The plaintiff could not perform tasks requiring binocular vision or depth perception.  [AR 18.]  The ALJ found that with these restrictions, the plaintiff could not perform any of her past relevant work.  However, considering the plaintiff's age, that of a younger individual,[1] her education, and even considering the lack of transferable skills, and based upon her residual functional capacity to perform a significant range of light work, and using Medical-Vocational Rule 202.21 as a framework for decision-making, there were a significant number of jobs in the national economy which the plaintiff could perform. [AR 18-19.] Accordingly, the ALJ concluded that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 19.]

### THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that the ALJ failed properly to consider that the assessment of the plaintiff's limitations by her treating psychiatrist, Dr. Robert Marozas, was "'apart' from the effects of drug or alcohol usage." [Joint Stipulation at 3.] The plaintiff

---

[1]20 C.F.R. § 404.1563(c) defines a "younger person" as an individual under age fifty.

1   further argues that the ALJ improperly failed to indicate whether she
2   accepted or rejected the opinion of Dr. Kenneth Levin, the medical
3   expert called to testify at the hearing, that the plaintiff would be
4   absent three or more days a month due to her impairment.  Last, the
5   plaintiff contends that the ALJ failed in his duty fully and fairly to
6   develop the record.

**DISCUSSION**

**The opinion of Dr. Marozas**

9        The opinion of a treating physician is generally entitled to
10  greater weight than the opinion of a physician who has not treated
11  the claimant.  This is so because the treating physician is employed
12  to cure and has a greater opportunity to know and observe his patient.
13  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  This is not
14  to say, however, that the opinion of even a treating physician is
15  "necessarily conclusive as to either a physical condition or the
16  ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751
17  (9th Cir. 1989), citing Rodriquez v. Bowen, 876 F.2d 759, 761-62 & n.
18  7 (9th Cir. 1989).  However, where the contradictory opinion of a non-
19  treating physician is based upon the same clinical findings considered
20  by the treating physician, the ALJ must cite specific and legitimate
21  reasons for rejecting the treating physician's opinion.  Andrews, 53
22  F.3d at 1041.  If the treating physician's opinion is not
23  controverted, then the reasons for rejection of his opinion must be
24  clear and convincing.  Id.

25       Dr. Marozas treated the plaintiff from September 19, 2002, and
26  was continuing to treat the plaintiff at the time of the second
27  hearing in September, 2003.  On March 26, 2003, Dr. Marozas completed
28  a questionnaire indicating that, apart from the effects of substance

use or abuse, the plaintiff had at least marked[2] limitations in almost
every assessed area of work functioning, including in such basic
activities as the ability to remember locations and work-like
procedures; ability to understand, remember, and carry out very short
and simple instructions; ability to ask simple questions or request
assistance; ability to maintain socially appropriate behavior and to
adhere to basic standards of neatness and cleanliness; and ability to
be aware of normal hazards and take appropriate precautions. Those
areas of work functioning not assessed as being moderately impaired--
the ability to maintain attention and concentration for extended
periods and the ability to perform activities within a schedule,
maintain regular attendance, and be punctual within customary
tolerances--were, according to Dr. Marozas, extremely[3] impaired. [AR
510-11.] Dr. Marozas also opined that the plaintiff would be absent
three or more days per month, on the average, due to her impairments
or treatment. [AR 511.]

    The ALJ gave "very little probative weight" to Dr. Marozas'
assessment that the plaintiff was markedly or extremely impaired in
all of the work functions, citing the lack of support for this
assessment in Dr. Marozas' treatment record.  The ALJ noted, for
example, the contradictory entry just weeks before the date of Dr.
Marozas' assessment in which Dr. Marozas indicated that the plaintiff
was doing better. [AR 15, 519.] Dr. Marozas also indicated that the

---

[2]This form indicates that the definition for "marked" is "serious limitations in this area.  The ability to function in this area is severely limited but not precluded." [AR 510.]

[3]"Extreme" limitation is defined in the questionnaire as a "severe" limitation indicating "[n]o useful ability to function in this area." [Id.]

1  plaintiff's cognition was "ok" and that the plaintiff had, in fact,
2  returned to school. [AR 519.] Therefore, despite asserted marked
3  limitations in the plaintiff's ability to remember locations and be
4  aware of normal hazards and take appropriate precautions, for example,
5  the plaintiff, impairment notwithstanding, was able to find her way to
6  and from campus and classes, and despite asserted marked limitations
7  in the plaintiff's ability to understand, remember, and carry out even
8  simple instructions, there were no significant abnormalities of
9  cognition, and the plaintiff was able to undertake (and pass) college
10 level courses. [AR 532.]

11     The plaintiff apparently does not argue that the ALJ's reasons
12 for rejecting Dr. Marozas' overall assessment were not specific and
13 legitimate.  Rather, the plaintiff contends that the ALJ erred by
14 failing to mention that Dr. Marozas' assessment was made "'apart' from
15 the effects of drug or alcohol usage."  The plaintiff argues,
16 therefore, that the ALJ failed properly to "consider the entire
17 context of the important assessment that was provided by the treating
18 psychiatrist." [Joint Stipulation at 3.]

19     The plaintiff's argument is unpersuasive.  Because the ALJ
20 properly rejected the entirety of Dr. Marozas' assessment of "marked"
21 and "extreme' limitations in the various work functions, with or
22 without consideration of substance abuse, the issue of whether the
23 rejected limitations assessed by Dr. Marozas pertained to limitations
24 apart from substance abuse is moot.

25     In any case, the ALJ found that "[t]he treatment notes simply do
26 not justify Dr. Marozas' conclusions stated in Exhibit 27.  Clearly,
27 the claimant's functionality is directly related to her drug use." [AR
28 15.] Although the plaintiff disputes this conclusion, Dr. Marozas

- 9 -

1   himself suggested otherwise, indicating as he had on January 16, 2003,
2   that the plaintiff "was doing well" until the plaintiff relapsed and
3   began to take speed. [AR 521.]

4       There was, therefore, no error in the ALJ's failure to discuss
5   that portion of Dr. Marozas' assessment which indicated that the
6   limitations he found were "apart" from the plaintiff's abuse of
7   substances.

8   **The ALJ's assessment of the medical advisor's testimony**

9       The plaintiff argues that the ALJ erred by failing to "mention
10  the important testimony from the medical expert indicating that the
11  Plaintiff would likely be absent from work 3 or more times per month
12  as a result of her depression.  Thus, the question must be asked
13  whether the ALJ accepted, rejected, or just forgot to discuss this
14  important testimony." [Joint Stipulation at 6.]

15      The ALJ found that Dr. Levin's testimony was credible. [AR 16.]
16  As the plaintiff notes, the ALJ did not discuss that portion of Dr.
17  Levin's testimony referring to absences of three or more days per
18  month. However, the ALJ is not required to analyze each and every
19  statement that might qualify as medical opinion.  "Rather,[he] must
20  explain why 'significant probative evidence has been rejected.'"
21  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984), quoting
22  Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981).

23      Contrary to the plaintiff's assertions, Dr. Levin did not testify
24  that the plaintiff "would likely be absent from work 3 or more times
25  per month . . . ."  Rather, Dr. Levin testified that it might be
26  "possible." [AR 563.] When asked whether there was a basis "for saying
27  that it's probable," rather than merely "possible," Dr. Levin answered
28  that he did not know.  [Id.]

- 10 -

1    The fact that the non-examining medical advisor testified that

2  the plaintiff might possibly be absent three or more days per month

3  due to her impairment is neither significant nor probative. There was,

4  therefore, no error in the ALJ's failure to specifically discuss this

5  testimony.

6  **The ALJ's failure fully and fairly to develop the record**

7    In a Social Security case, the ALJ has an independent duty fully

8  and fairly to develop the record even where the plaintiff is

9  represented by counsel.  "Ambiguous evidence, or the ALJ's own finding

10 that the record is inadequate to allow for proper evaluation of the

11 evidence, triggers the ALJ's duty to 'conduct an appropriate

12 inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001),

13 quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

14   The plaintiff contends that because the medical advisor testified

15 that the plaintiff probably had a personality disorder, the ALJ failed

16 fully and fairly to develop the record by "failing to properly order

17 proper testing to diagnose the personality disorder." [Joint

18 Stipulation at 9.] However, the mere fact that the plaintiff probably

19 had a personality disorder does not mean that the ALJ was required to

20 order testing to establish the diagnosis.  Mayes v. Massanari, 276

21 F.3d 453, 459 (9th Cir. 2001)("The ALJ had no duty to develop the

22 record by diagnosing Mayes' herniated discs"); Hawkins v. Chater, 113

23 F.3d 1162, 1168 (10th Cir. 1997), quoting Baca v. Department of Health

24 & Human Servs., 5 F.3d 476, 479-80 (10th Cir. 1993)("The ALJ does not

25 have to exhaust every possible line of inquiry in an attempt to pursue

26 every potential line of questioning....  The standard is one of

27 \\\

28 \\\

reasonable good judgment.  The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'").

The plaintiff was seen by multiple physicians and was diagnosed with multiple conditions.  Although physicians other than Dr. Levin indicated an Axis II diagnosis of a personality disorder [AR 477, 487] or borderline traits [AR 503], multiple other physicians either have failed to indicate any Axis II diagnosis, or they indicated that such a diagnosis was "deferred." [AR 183, 187, 199, 203, 354, 468, 526.]

In either case, however, the plaintiff herself did not request a consultative examination at the time of the hearing, although the plaintiff's counsel inquired at the hearing what type of testing would be required to determine the existence of such a personality disorder. Hawkins v. Chater, 113 F.3d at 1168 ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record"). [AR 563, 572-73.] Neither did the plaintiff cite any evidence whatsoever that the personality disorder resulted in any additional non-exertional limitations.  In short, the record was more than adequate to allow a proper determination [Tonapetyan, 242 F.3d at 1150], and the plaintiff failed to show "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation" [Hawkins v. Chater, 113 F.3d at 1167].

Accordingly, there was no error in the ALJ's failure to order testing to establish the diagnosis of a personality disorder.
\\\

1

**CONCLUSION**

2       _____After careful consideration of the complaint, joint stipulation

3  of the parties, the transcript of the record, and in accordance with

4  the foregoing discussion, the magistrate judge finds that the decision

5  of the Commissioner is supported by substantial evidence and that the

6  Commissioner applied the proper legal standards.

7

**ORDER**

8       IT IS ORDERED that judgment be entered in favor of the

9  Commissioner and against the plaintiff.

10

11  Dated: December 2, 2005

12                                          _____/s/_____

13                                          JAMES W. McMAHON
                                            United States Magistrate Judge